Mr. Schwab, you're the trustee in this case? Yes, I am, your honor. This is like a... If I may, may I reserve three minutes for rebuttal? You may. This is like a law school exam question. Well... You can educate us here. Well, this is an unusual case in that as a result of the original decision from Judge Thomas in the Middle District, we now have a conflict among the districts in Pennsylvania dealing with exemptions and valuations on Schedule C. There's already a conflict among the circuits, although four circuits rule one way, one circuit rules a different way. This case arose out of a motion to sell restaurant... Your honor, we're familiar with that. Why don't you wait until after the 30-day period had expired before seeking an appraisal? I mean, isn't the deal here that if you have a question, whether it's 10,000-something versus 17,000, you ask for an extension of time from the court prior to the 30 days and then almost invariably it's given? That has not been the practice in Pennsylvania prior to this case, but the statute gives you the practice. Well, the practice doesn't talk about valuation. Rule 4003, the word valuation doesn't exist anywhere, your honor. Instead, most of us were following Judge Benson's decision of 2002 from the Western District. Let's begin with the statute. Let's see if we can all configure this out together. 522B speaks about what? Does it speak about property or values? It talks about property. And so she sought to exempt property that she put a value on and you didn't object? I did not object. Both of the exemptions that were taken were proper exemptions. There was no grounds to object to either one. They were of proper value. But if you believed on day one, based on an appraisal, or somebody had come to you and said, you know, hey, wait a minute, that equipment is not worth 10,000, 700,000. It's worth far more than that. Would you not have objected? Normally, I would not have prior to this decision. But you wouldn't be here if you had objected in that situation. If somebody comes to you and you know before the 30 days, you're telling me, you're just going to say, to heck with it, I'm just going to roll the dice, see what happens. Wouldn't the prudent thing to be to object the next day? Except you're objecting to valuation. And there's nothing in the rules that require us to object to a valuation. Your Honor, I'm objecting to an exemption being given here because the property, I believe, or have been told, is undervalued. It may be undervalued, but the exemptions that were claimed were proper. But do you agree you would not be here had you objected within 30 days? I would agree with that, Your Honor. And as a result, approximately 20% of the cases now cause objections to be filed. Or an extension to be asked for in order to do an appraisal. Well, the extensions are a bit more difficult. Under C, in order to get an extension, excuse me, under B, to get an exemption under 4003, we're in a situation where I have to ask for cause. Normally, I don't have valuations. Normally, I don't have my UCC searches back. But wouldn't most courts say that the cause is that I have some question about the appraised value. Therefore, I need to get an appraisal. The appraiser isn't done yet. Although, isn't that normally what happens? Wouldn't that be cause? It may be cause, but that's up to the court whether it is or not. Similar to what the courts have said in Heflin, we're in a situation of object now and ask questions later. We're still investigating. I have 30 days in which to investigate in this case. Once upon a time when we did these things, other than maybe at the end of the year, you can call an appraisal and have that appraiser give you a pretty good number within a matter of days. About weeks, days. That's not the practice in rural Pennsylvania, Your Honor. In this case, this particular location is about 25 miles from my office. The appraiser, I ultimately got to go out. If that's not the case in rural Pennsylvania, or where I grew up in rural Ohio, then shouldn't you then go and get an extension because you have cause because you can't get it done normally within 30 days to find out? Except I have other due diligence items to do. Let me ask you this, if I could, Mr. Schwab. I think it goes to the point that Judge Ambrose is getting at, which is why isn't this sort of done on the basis of the Taylor decision, where the Supreme Court said, look, in effect, it may give bad incentives to debtors, it may be harsh, but hey, we don't write the rules. Congress did it, you're living with it. You got 30 days, you don't, you're stuck with it. End of story. Judge, I think if you look at the start of the Taylor decision, it talks about the trustee should have objected to an exemption that had no colorable basis. We're in a situation here where there was a colorable basis. The exemptions amount were proper, they were easy to determine. I can look at it and say, yes, he's under the limit under federal exemptions for tools of the trade. He's under the limit for the log card. So let me make sure I understand it. Your view of Taylor is that because the debtor there was making a claim that couldn't even be called colorable, that debtor's in a better position than one who makes a colorable claim but with whom you later disagree as to valuation. You're better making something outlandish because then the trustee is stuck with the time limits than you are making a colorable claim. I believe that's what the First, Fourth, Eighth, and Ninth Circuit have already said, Your Honor. But go back to Taylor. I mean, isn't what Justice Thomas wrote in Taylor is even though the debtor did not have the right to exempt more than a small amount of the portion of the proceeds from the lawsuit, when she claimed the full amount, obviously in error, and it wasn't met with a timely objection by the trustee, the full amount became exempt. I mean, that's a tougher case than what you've got here. Well, I don't believe so, Your Honor, because the facts of Taylor, she claimed unknown. And she claimed exemption as unknown. She didn't claim a specific amount that a trustee or a creditor could have claimed. But in reality, she could have claimed what? Excuse me? In Taylor, in reality, she could have claimed what? About $7,500, I believe. $7,500, and she settled for what, $110? Yes, she did, Your Honor. So, Sid, that's a much tougher case than this. Well, I see it that the trustee had an obligation at that point. There was no colorable basis for an unknown exemption. Well, she talked to, in that case, the Supreme Court noted that the debtor had told the trustee, I think it's coming in at $90-some-thousand. It was just the trustees thinking, I don't believe it. That's the basis on which you make the distinction whether the trustees got a good gut feel or not? Well, that's unfortunately how many of us make decisions on whether we go after an asset case or not. But isn't that what the Supreme Court is saying is that you can go with your gut if you want, but if your gut takes you outside the 30 days, too bad. I think it is if there's not a specific number. You know, the creditors look at the schedules. They don't come to 341 meetings, as a general rule. The creditors are looking and say, okay, she's claiming $7,500. She's claiming, in this case, a little over $10,000 in exemptions that were colorable. These were exemptions she was allowed to have. There is no question. If I objected to those exemptions, I probably would. I may have created a situation where the judge could have been angry with me. But in Taylor, Taylor was actually pretty smart. The way to probe her, Taylor, is not to put a number in. Because if you say it's worth under $7,500 and it turns out to be worth $110,000, then you possibly have an equity issue. All this person says is, don't know what it is, move for an exemption. As it turns out, the most she could have asked for was $7,500. And the practice has been, Your Honor, in that situation that we regularly object, a dollar exemption. But isn't what the court is saying there, isn't the principle that you have to object timely within 30 days or within such extended period? Except you're having me, if I follow that, I'm objecting to a valuation rather than the exemption itself. Even though 542 talks about property and not value. It talks about, shall list the property claimed as exempt. And why shouldn't you do that? Why is that wrong? Why does that put you in a bad position? And what are the consequences in all kinds of other cases that you're going to deal with? You mean for? For making you? I have 30 days, Your Honor. Exactly. And as with 30 days, I'm in a situation where in the 30-day period, I have to examine not just the exemptions. I have to examine the tax returns. I have to examine the wage stubs. I have to examine all the other assets that may be there. I have to look at real estate. I have to look at, I normally have to ask for more information for what is the payoffs. So that in the 30-day period, I'm looking mathematically, are their exemptions correct? Not are their values correct? And that's the subtle difference. And I agree with Judge Ambrose that it may be better if somebody, for a debtor's perspective, if a trustee doesn't catch an unknown or a dollar, then they may get away with something. But that's the trustee's job to object to that because that's not a tolerable basis for an exemption. But they're saying then the exemption is unknown. The exemption is a dollar. We're not objecting any time to the valuation. And that's a subtle difference. I'm missing the subtle difference. If we go with the appellee here, what will be the effect on your job as trustee? My effect as a trustee is essentially what has been happening. Approximately 20% of the cases now are in a situation where either a motion has to be filed for extension of time or an objection has to be made to the exemptions for the $60 the trustee gets. We're now looking at a burden to the court. Rule 1001 talks about efficient, reasonable administration of justice. Now we're adding a layer that hasn't been in the past applied to any of the trustees in this circuit. This is something we haven't done in this circuit in the past. When you say this is something you haven't done, you're talking about you haven't checked to see whether the valuations that debtors put on exemptions are accurate or not? The valuations we've always investigated as time permits, as we can get someone to go out. What I'm trying to get an answer to is why doesn't Taylor tell you you don't have that luxury anymore? I believe Taylor doesn't speak to valuation. Judge Thomas talks about the exemption itself. The claim of exemption unknown is objectionable by and of itself. So you don't think that Taylor, revolving as it does, around how much something was worth is about value? No. And I think the sister circuits have followed that as well. Some. Well, the 11th Circuit is the only one that has not. And it's a bit interesting that the only lower court under the 11th Circuit that's looked at, the Green case, actually rules with the other four circuits. So I don't even know if it's being followed in the 11th Circuit. Good. Thank you very much.  Thank you, Your Honor. We'll hear from Mr. Andrews. Good morning, Your Honors. Good morning. I represent Nadia Riley, the debtor. Your Honor, I wish the court would ask Mr. Schwab when he put in motion his request for an appraisal. At the first meeting of creditors on June 22nd, he had the appraisal in his file. He showed it to me that it had a value of $17,000 or $6,300 higher than our exemptions. That was on June 22nd. In his motion to set aside this sale, filed August the 13th, he again refers to he has examined the property with his proposed auctioneer, Hauser Auctioneers, and determined it was in the best interest of the estate to have this matter go for public sale. That was filed August the 13th. He knew it all along, Your Honor, that these items, not his normal practice. What did he know in this case? He knew all along he had a claim at this exempt property for $6,300 or whatever he can get at sale. What was the basis, by the way, for making the 10.7 claim? The basis for 10.7 was that we had a wild card exemption, and we had a spillover exemption available, and we used part of the tools of the trade exemption. I don't understand how you got around this. What was the appraiser value, or how did you value, what made you value the 10.7? My client filed in this case a list of exempt, all of the items, not just household goods, excuse me, tools of the trade, everything, slicers, refrigerators. She put the price on the day of the bankruptcy that she obtained from appraisers in the area, what they thought it was worth. Most of those values are half price. She took that value and exempted that entire value. She valued it at the half price or whatever her verbal appraisal was. She itemized each and every list. She attached it to the schedules B and C, and she took the full value of her items right there. It was all laid out in plain understanding for him to challenge. So what you're saying is that at the 341 meeting, he had an appraisal. It was 17,000-some, and for some reason, he didn't object in June or within 30 days of the June 22nd meeting, but rather waited until August 13th. That's right, Your Honor. He thought the statute didn't have the word value in it. It had the broad word objections, and all that objections might mean. It didn't have a word value in it, as some later cases seized upon to justify their rationale. He played his cards, and like the trustee in Taylor, he thought wrong. The cases hold differently. We had a clear intent to exempt out all of this property. We did exempt out all of this property, and he made no challenge whatsoever. There's a recent case I didn't cite in my brief. I just came upon it to cite August 28th of 2006. In Ray Peterman from the District Court of Colorado, 358-BR-801. And in that case, the trustee attempted to have an appraisal of the exempt property. It's on six months after the first meeting occurred. The court said this constituted an attempt to challenge exemptions, and it violated the reasoning in Taylor. There's another case, in Ray Wisner. Doesn't Anderson help you, too? Pardon me, Your Honor? Doesn't the Anderson case help you? Yes, Your Honor. That's the bankruptcy in the Western District of Michigan. Yes, Your Honor. It was cited by the trustee, but I mean, does it help you, actually? Yes, Your Honor. I think I distinguished those cases in the whole part of my brief. Sorry. There was a case where they sought to exempt a $15,000 interest in a hunting property. The trustee failed to object in a timely manner, but later learned that the debtor's interest was worth $30,000, double what it was stated to be. Well, they have a duty to investigate in that 30 days, Your Honor. The case came out on a different procedural ground, but doesn't the case actually support you, the court, that you needed to file an objection in a timely manner? Yes, Your Honor. Well, let me ask you this. I'd like you to respond to the assertion that Mr. Schwab is making. I don't mean to put words in his mouth, but I take his argument to be it's unreasonable to put the burden on the trustee within that 30-day time frame to check the pay that are being asserted as the valuation here. If somebody's off as much as your client was off by nearly twice, that the burden ought to fall on them and not on the court to deal with objections prematurely made or extensions that maybe didn't need to be made. The burden ought to be on the debtor to get it right, and that's not too much to ask. In the first instance, the burden is on the trustee to object and prove his case, not the debtor. Maybe I've used the wrong language. Let me make sure you understand my question. I take what we're hearing here to be that there ought to be some policy sense to what we're looking at when we look at how to apply this rule, and that the policy sense from Mr. Schwab is if you make us trustees filing objections unnecessarily and motions for extension unnecessarily just to protect themselves, burdening the court unnecessarily when what you've really got here is a debtor who could have given an accurate count but didn't, and the fact that the debtor didn't and we discovered it means the debtor ought to take the hit and the creditors get the money instead of the debtor getting to keep the money for valuing something about half what it should have been. That's the thing I'm trying to get you to answer. If his argument is it should be reasonable, he should be arguing in Congress. Congress gave him 30 days. The Supreme Court gave him 30 days to file his objections. There's case laws that say the onus is always on the trustee to discover it. The policy is for finality, fresh start, not a stale start. The trustee can use these goods in 30 days and get his life on it. And Taylor hits the point of finality in other cases. That was the intent of Congress. That's how that statute has been read. It's not Mr. Schwab's brand new reading because he has too much work. He gets a reasonable period of time. What's that going to be? How are you going to decide reasonable in the courts? You'll be deciding that term for the 13 years that we've had Taylor on the books. That's his 30 days. So how do you account for what the other circuits have done? I think the other circuits have done a misreading. In many of those circuits, they're applying homestead exemptions from their state, which are value exemptions, which allow a creditor to take a value. For example, a case in California, they put $45,000 for their exemption. That was a statutory amount under the homestead law of California. So the trustee said, okay, I'll give you your $45,000. They made no attempt to take the whole asset, the entire asset, whereas my client did in many of the cases that go along with my client's position, too. And there's several others that are applying these homestead values. Hyman was the case in California. Addison v. Revis, Virginia. They're applying their states. They didn't opt out. They applied the state's value exemption in here. So they're looking at what does the creditor get in the equity after the secured market. But another point, Your Honor, what are exemptions? They're exempt out from unsecured creditors. In the 30 days, 522C says they're exempt, and they don't get involved in the administration of the trustee or involved in satisfying creditors' claims. Only lien holders can challenge those exemptions. And there is no state. The case law has always been exemptions are excluded from the estate, and they're excluded after the 30 days, as many states, or excuse me, as a lot of decisions have stated. They're not subject to each of creditors. They're not subject to the administration of the trustee. There's a case in Western District of PA. Inray Bistranson, 95BR29. And another one from the Western District, Inray Davis, where a debtor's claim is upheld. The property subclaim is no longer considered property of the estate. It's gone. It's gone. It's not a secured lien. This is unexempt property given to the trustee to start his life anew. This finality that's required here, prompt finality, so he can start his life over. Not in a situation where we're arguing it out, or deciding what's reasonable for the trustee, or we will let the trustee speculate on when this stuff might, when this stuff may have greater value. What happens when this stuff depreciates as it would here over time? It would ultimately go down towards the debtor's value. Why should he speculate? Why should he accumulate more authority than what he has under the act? He should be campaigning in Congress here, not before this court changes the rule from 30 days to what's reasonable. Another case he cited, Zupanisic out of Florida. There's the same reasoning. They claimed the entire asset, all of its value to them. And since they claimed the entire asset, there was a clear intent to claim all of it, no matter what the value ultimately was placed upon it. In Taylor, the case that was decided in this circuit, by the Supreme Court, she didn't even know what the value of this suit was. And what it came to, she didn't get $7,500, which could have been a fair and equitable argument. She got $95,000, the full value of what she claimed, except that was from the Supreme Court. And the Supreme Court added this court, and that should be the law that's followed, and continues in the Third Circuit. In summary, we decided the case Patterson v. Shuman. And in that case, the Third Circuit said, what we're going to do is minimize these artful attacks, or these constructive attacks by creditors to get at a person's pension plan. We want to minimize that, so we're having the law tightened in this regard. And ultimately, they said that Congress wanted to give these pensions to people, and they made this plan, they made the law very tight. Congress wanted to give these kinds of exemptions to people for the fresh start, and so they cut it off at 30 days for the objection period, to object to any law problems that he might have. If he goes over that, he violates the law, he violates the reasoning in Taylor. And just to try to set up a scale is just an artifice to get around this clear law and intent of Congress and this court. Thank you very much. Any questions? Mr. Andrewtsy, thank you very much. Mr. Trump. I just want to touch on a couple of items. Maybe we could start with, did you really have an appraisal at the time of the 341? I had essentially a verbal. What they told me was what it was worth. I did not have my UCC searches back at that point, so I didn't know if there was any equity at all. But the verbal told you, what, 17? A minimum of 17. So you decided you were just going to roll the dice. It would seem, regardless of what the Ninth Circuit does or anyone else, any bankruptcy court elsewhere, in light of Taylor, I keep coming back, the sensible thing is just file an objection. You now have something told to you that indicates that this property is worth more than what has been claimed. But, Your Honor, if we're looking at the case law from Judge Betz. There is no case law in the circuit where you are. Well, there is from an adjoining district, which we've normally filed Judge Betz in the Western District of Pennsylvania. But so far you're over, too, with the bankruptcy judge and with the district judge, right? I realize that, Your Honor. But with our court looking at what has already occurred in the Western District, when we're looking at the other circuits, we're in a situation where it's, could I have objected? Yes. I'm looking at 4003, and I'm not seeing anything that says value. I'm seeing the debtor, and I'm willing to pay the debtor what they claim, the value of their exemption. But it flips. 10,700. 4003 and 522, you can flip that argument and say, you're asking to exempt property, regardless of value. I believe that's what an exception is. Isn't that what Taylor did? I mean, the person was allowed to claim up to 7,500, didn't know what it was, and ends up getting, you know, a gargantuan home run. And the Supreme Court says, didn't object, gets to keep the home run, we're not going to go back and call that again. And that goes to their claim of exemption. It doesn't go to their original valuation of the property. And I think that's where it's being missed. What I didn't indicate, and Terry Andrews mentioned two cases that have been But at this point, isn't either your argument, I'll add to what Mr. Andrews has said, isn't either your argument with Congress or to add to it maybe with the Supreme Court? I don't believe so, Your Honor. I mean, if you look at the two lower court cases that have actually looked at this issue since we briefed this, the BAP and the Ninth Circuit in Ray Chappell came back and said, when you claim a specific amount, that's all you get. You get this specific amount. That's what Attorney Andrews indicated. He's talking, we claim the value, you get that value. That's your claim of exemption. The claim of exemption in Rule 4003 doesn't say anywhere that Schedule B, Schedule A, the values that debtor puts on there are binding on the creditors. And that's what, you know, Attorney Andrews is trying to say at this point. The other case I want to point out is Ittery Scott, where the court ruled, and that was just this summer, no reason to object when there's a proper exemption. And again, even if it equals the amount. Thank you, Your Honor. Excuse me. I think both of you have cited some cases that are not in the briefs. And if that's the case, would you both submit 28J letters? Sure. Just telling us what the cases are and giving a very brief description of the cases. It would be very helpful to the court. We're more than happy to, Your Honor. Thank you. Both of you practice in the same county? No. Gino is up in Hazleton. He's up in Zurn County. I'm in Carbon County. Why are you in adjacent? Well, we've grown up together, one way or another. We still smoke in the area. Well, I'm sure that you're both excellent advocates, and I'm sure you'll go out and have a drink after this particular session. That may happen, Your Honor. The case was very well argued. We'll take the matter under advisory.